UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**VICTOR ARIZA**,

      Plaintiff,

vs.

**TRIEU DEVELOPMENT GROUP, LLC,**
**a Florida limited liability company; and**
**V NAIL & SPA, INC., d/b/a VENETIAN**
**NAIL SPA, a Florida for-profit corporation,**

      Defendants.

_____/

## **COMPLAINT**

Plaintiff VICTOR ARIZA, through undersigned counsel, sues Defendants TRIEU DEVELOPMENT FROUP, LLC, a Florida limit4ed liability company, and V NAIL & SPA, INC., d/b/a VENETIAN NAIL SPA, a Florida for-profit corporation, and alleges as follows:

1.    This is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36. This also is an action for declaratory and injuncrtive relief, damages, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. §794, *et seq.* ("Rehab Act").

2.    This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, and the provisions of the ADA and the Rehab Act. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff VICTOR ARIZA is a resident of Miami-Dade County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Plaintiff is also expressly authorized to bring this case under the Rehab Act, 29 U.S.C. §§794(a)(2) and 794(b)(3)(A), and under Section 505-f of the Rehab Act which enforces Section 504 of the Rehab Act, 29 U.S.C. §§794 and 794a, incorporating the rights and remedies set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d, *et seq*.

5.      Plaintiff is and at all relevant times has been blind and visually disabled in that he suffers from optical nerve atrophy, a permanent eye disease and medical condition that substantially and significantly impairs his vision and limits his ability to see.  Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and in 42 U.S.C. §3602(h).  Plaintiff is also an otherwise qualified individual with a disability who has been denied the benefits of a program or activity receiving federal financial assistance and is thus covered by the Rehab Act, 29 U.S.C. §794(a). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or the recipients of federal financial assistance and/or their respective and associated websites are in compliance with the ADA, the Rehab Act, and any other applicable disability laws, regulations, and ordinances.

6.      Because he is blind and visually disabled, Plaintiff cannot use his computer without the assistance of appropriate and available screen reader software.  Screen reader software translates the visual internet into an auditory equivalent.  At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.  The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017).

7.      Defendant TRIEU DEVELOPMENT GROUP, LLC ("TRIEU") is a Florida limited liability company authroizxed to do business and doing business in the State of Florida. Defendant V NAIL & SPA, INC. ("V NAIL") is a Florida for-profit corporation authorized to do business and doing business in Miami-Dade County and the State of Florida.  TRIEU has at all relevant times been doing business nationwide and in the State of Florida through its associated website, https://venetiansalon.com (the "Website"), and its affiliated, authorized, associated, licensed, and/or franchised companies operating physical "Venetian Nail Spa" salons, including the salon owned and operated V NAIL, located at 7353 Collins Avenue, Miami Beach, Florida, that Plaintiff intended to patronize in the near future.  Indeed, TRIEU at all times relevant hereto

linked to its Website all of its authorized, affiliated, associated, licensed, and/or franchised retail salons, including the "Venetian Nail Spa" salon owned and operated by V NAIL, such that the Website has been and continues to be held out as the official Website for V NAIL and its owned salon. Indeed, the TRIEU Website is specifically linked, through a "store locator" feature, to each "Ventian Nail Spa" physical salon in the U.S., including the salon owned and operated by V NAIL. The Website link to the "Ventian Nail Spa " salons, including the V NAIL owned and oeprated salon, not only allows the public to locate the salons, but also allows for visitors to purchase gift cards online for purchases of the services and producs available in the physical salons. The Website thus has acted, and continues to act, as a point of sale for gift cards for the purchase of tehs ercies andproducdts of the physical "Venetian Nail Spa" salons, including the salon owned and operated by V NAIL in Miami Beach, Florida. Defendants thus together own, operate, and/or control, through contracts and agreements, including franchise agreements, "Venetian Nail Spa" one or more physical salons that prvide nail treatment, waxing, skin care treatment, and massage services to the public, including the salon Plaintiff had patronized and intended to patronize in the near future at 7353 Collins Avenue, Miami Beach, Florida. Defendants also own, lease, lease to, and/or operate businesses that are recipients of federal financial assistance to the companies as a whole within the meaning of Rehab Act, 29 U.S.C. §794(b)(3)(A)(i). See attached Exhibit "A".

8. Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, in order to effectively communicate and comprehend information

available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10.     At all times material hereto, Defendants were and still are organizations that own, operate, and/or control nail, waxing, sking care, and massage salons under the name "Venetian Nail Spa."  Each Veneitan Naiul Spa salon, including that of V NAIL, is open to the public.  As the owners, operators, and/or controllers of these salons, Defendants are defined as places of "public accommodation" within meaning of Title III because Defendants are private entities that own and/or operate a "beauty shop, … or other service establishment," per 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(6).

11.     Because Defendants are beauty service salons open to the public, each of Defendant's physical salons is a place of public accommodation subject to the requirements of Title III of the ADA, 42 U.S.C. §12182, §12181(7)(F), and its implementing regulations, 28 C.F.R. Part 36, 28 C.F.R. §36.104(6).

12.     Defendant TRIEU controls, maintains, and/or operates the Website.  One of the functions of the Website is to provide the public information on the locations of Defendants' physical salons that offer and sell their beauty and health related services nationwide and within the State of Florida.  Defendants also sell to the public "Venetian Nail Spa" gift cards through the Website, which thus acts as a point of sale for Defendants' gift cards and their services andprodcudts offered in their network of physical salons.

13.     The Website also services Defendants' physical salons by providing information on their available merchandise, services, and gift cards, tips and advice, editorials, sales campaigns, events, and other information that Defendants are interested in communicating to its customers.

14.     Because the Website allows the public the ability to secure information about the locations of Defendants' physical salons though a "store locator" feature, and purchase gift cards for the purchase of Defendants' health and beauty related services offered and available in the physical salons, the Website is an extension of, and gateway to, the goods, services, privileges, and advantages of Defendants' physical salons.  As a necessary service, privilege, and advantage provided by places of public accommodation as defined under the ADA, the Website thus is an extension of the goods, services, privileges, and advantages made available to the general public by Defendants at and through their brick-and-mortar locations and businesses.

15.     Because the public can purchase gift cards for the purchase of Defendants' services available in the physical salons, thus acting as a point of sale for Defendants' services available in the physical salons, the Website has a nexus to and is an extension of, gateway to, and necessary service, privilege, and advantage offered by, the physical salons, which are places of public accommodation under the ADA, 42 U.S.C. §12181(7)(F).  As such, the Website is a necessary service, privilege, and advantage of Defendants' brick and mortar salons that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded to the non-visually disabled general public both online and in the physical salons.

16.     At all times material hereto, Defendants were and still are organizations owning, operating, controlling, and/or linking to the Website.  Since the Website is open to the public through the internet and is connected to Defendants' physical salons as a point of sale, via gift cards, for Defendants' services, the Website is a necessary service, privilege, and advantage of Defendants' brick-and-mortar salons that must comply with all requirements of the ADA, must

not discriminate against individuals with visual disabilities, and must not deny those individuals the full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical salons. As such, Defendants have subjected themselves and their Website to the requirements of the ADA. In addition, as recipients of federal financial assistance, Defendants have subjected themselves and all their operations, programs, and activities, including the Website, to the requirements, prohibitions, and anti-discrimination provisions of the Rehab Act.

17.     Plaintiff is and has been a customer who is interested in patronizing, and intends to patronize in the near future once the Website's access barriers are removed or remedied, Defendant's physical salons (including the salon located at 7353 Collins Avenue, Miami Beach, Florida), and to search for the brick and mortar salons, check store hours and services pricing, and purchase gift cards for services, for use in the physical salons. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software.

18.     The opportunity to shop and pre-shop Defendants' services offered for sale in the physical salons and purchase gift cards for use in the physical salons from his home are important accommodations for Plaintiff because traveling outside of his home as a blind and visually disabled individual is an often difficult, hazardous, frightening, frustrating and confusing experience. Defendants have not provided their business information in any alternative digital format that is accessible for use by blind and visually disabled individuals using screen reader software while using the internet.

19.     Like many consumers, Plaintiff accesses numerous websites at a time to compare services, services, prices, sales, discounts, and promotions. Plaintiff may look at several dozens of sites to compare features, discounts, promotions, and prices.

20.     During the month of February 2021 and again in February 2022, Plaintiff attempted on a number of occasions to utilize the Website to browse through the services and online offers to educate himself as to the services, sales, discounts, and promotions being offered, learn about the brick-and-mortar salons, check salon hours, and check pricing of services with the intent of making a purchase through the Website or at one of Defendant's salons.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons, such as himself, who use screen reader software to access and navigate company websites.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons, such as himself, who use screen reader software to access and navigate company websites.

21.     Plaintiff utilizes screen reader software that allows individuals who are blind and visually disabled to communicate with company websites.   However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

a. The company logo/return to home page button is mislabeled;

b. The submenu is inaccessible when navigating solely with a keyboard;

c. Promotional image is not labeled;

d. Site function such as shopping cart is not properly labeled;

e. Inside the shopping cart, gift card price, subtotal, and estimated order total are inaccessible;

f. Once an item is removed from the shopping cart there is no notification that the action was executed;

g. Social media icons are not labeled; and

h. Text throughout the website is not labeled to integrate with the screen reader as only the links are accessible.

22.     The Website also lacks prompting information and accommodations necessary to allow blind and visually disabled individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendants' services from the Website.

23.     Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. However, Plaintiff was unable to do so because no such link or notice, statement, or policy existed on the Website.

24.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same online and in store shopping experience, with the same access to the services, sales, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

25.     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize Defendants' physical salons and to use the Website as an extension, privilege, and advantage of the physical salons, but he is unable to fully do so as he is unable to effectively communicate with Defendants and their physical salons due to his severe blindness and visual disability and the Website's access barriers.  Alternatively, as a tester using scree reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to his severe blindness and visual disability and the Website's

9

access barriers.  Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because the Website clearly provides support for and is directly connected with Defendants' public accessed salons for their services, prodcuts, operation, and use, and thus is an extension, service, privilege, and advantage or accomodation of Defendant's brick and mortar stores for the purchase of Defendant's services, the Website must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal enjoyment of the services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical salons, which are places of public accommodation subject to the requirements of the ADA.   In addition, because Defendants are recipients of federal funds as a whole, Defendants and all of their operations, programs, and activities, including the Website, are also subject to the requirements of the Rehab Act and must not exclude or discriminate against qualified or otherwise qualified individuals with visual disabilities such as Plaintiff.

27.     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

28.     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

29.     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

30.     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

31.     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

32.     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

33.     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

34.     Defendants have not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the blind and visually disabled.

35.     Defendants have not created and instituted on the Website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

36.     The Website does not meet WCAG 2.0 Level AA or higher versions of web accessibility.

37.     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing and scheduling appointments for Defendants' services offered on the Website online from their homes.

38.     Thus, Defendants have not provided full and equal enjoyment of the services, facilities, privileges, advantages, accommodations, programs, and activities provided by and through the Website in contravention of the ADA and the Rehab Act.

39.     Further, public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.  Likewise, under the Rehab Act, public accommodations and companies that receive federal financial assistance must not discriminate against disabled persons and are required to make the facilities, programs, or activities they operate fully and readily accessible to persons with disabilities.

40.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website.  In addition, Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects and activities receiving federal assistance " ... be carried out in a manner consistent with the principles of ... inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. §701(c)(3).

41.     Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

42.     Defendants are, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

43.      The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities such as Plaintiff.

44.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means

to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with its website access and operation.

45.     Notice to Defendants is not required because of Defendants' failure to cure the violations.

46.     Enforcement of Plaintiff's rights under the ADA and the Rehab Act is right and just pursuant to 28 U.S.C. §§2201 and 2202.

47.     Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

## **COUNT I – VIOLATION OF THE ADA**

48.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

49.     Pursuant to 42 U.S.C. §12181(7)(F), Defendants are public accommodations under the ADA because they own, control, and/or operate physical health-related service salons and the connected Website, as defined within §12181(7)(F), and are subject to the ADA.

50.     Pursuant to 42 U.S.C. §12181(7)(F), the Website is covered under the ADA because it provides the general public with the ability to locate and learn about Defendants' salons and acts as a point of sale for Defendant's physical salons by allowing users to purchase gift cards for the purchases of Defendants' services and products available in the physical salons. The Website thus is an extension of, gateway to, and necessary service, privilege, and advantage of Defendants' physical salons, which Plaintiff intended to patronize. Further, the Website also serves to augment Defendants' physical salons by providing the public information on the location of the salons and by educating the public as to Defendants' available services sold through the Website and in the physical salons. The Website thus is necessary for Plaintiff to fully enjoy and

have access to all of the goods, services, privileges, and advantages being offered by Defendants both online and in the physical salons.

51.     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

52.     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

53.     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

54.     The Website must comply with the ADA but it does not as specifically alleged hereinabove and below.

55.     Because of the inaccessibility of the Website, individuals with visual disabilities are denied the full and equal access to and enjoyment of the goods, information, and services that

14

Defendants have made available to the public on the Website and in the physical salons in violation of 42 U.S.C. §12101, *et seq.*, and as prohibited by 42 U.S.C. §12182, *et seq*.

56.     The Website was subsequently visited by Plaintiff's expert in December 2021 and February 2022 and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed.  Defendants thus have made no material changes or improvements to the Website to enable its full use, enjoyment and accessibility for blind and visually disabled persons such as Plaintiff. Defendants also have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to blind and visually disabled individuals, nor have they posted on the Website a conspicuous and effective "accessibility" notice, statement, or policy to provide blind and visually disabled persons such as Plaintiff with a viable alternative means to access and navigate the Website. Defendants thus have failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.  The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Robert D. Moody, attached hereto as Composite Exhibit "B" and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

57.     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

58.     Further, the Website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the Website's accessibility information and accessibility facts.

59.     There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard.  Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' businesses nor would it result in an undue burden to Defendants.

60.     Defendants have violated the ADA – and continue to violate the ADA – by denying access to the Website, and hence Defendants' connected physical salons, by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within the Website are ongoing.

61.     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

62.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

63.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided

in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

64.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

65.     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

66.     As a direct and proximate result of Defendants' failure to provide an ADA compliant Website that has a nexus tio, and is an extension, service, privilege, advantage, and critical and necessary point of sale for Defendants' brick and mortar salons, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of the services, privileges and advantages of Defendants' physical salons.

67.     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

68.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a) Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendants' policy to ensure persons with visual disabilities have full and equal access to and

enjoyment of the services, facilities, privileges, advantages, and accommodations offered in Defendants' physical salons through the Website.

b) Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' physical salons and becoming informed of and purchasing Defendants' gift cards and services online, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

69.     Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A.  A declaration that the Website is in violation of the ADA;

B.  An Order requiring Defendants, by a date certain, to update the Website, and continue to monitor and update the Website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

C.  An Order requiring Defendants, by a date certain, to clearly display the universal disabled logo within the Website, wherein the logo[1] would lead to a page which would state Defendants' accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the Website;

D.  An Order requiring Defendants, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to ensure compliance thereto;

E.  An Order directing Defendants, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendants to undertake and complete corrective procedures to the Website;

F.  An Order directing Defendants, by a date certain, to establish a policy of web accessibility and accessibility features for the Website to ensure effective communication for individuals who are visually disabled;

---

[1]  or similar.

G.   An Order requiring, by a date certain, that any third-party vendors who participate on Defendants' Website to be fully accessible to the visually disabled;

H.   An Order directing Defendants, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.   An Order directing Defendants, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of the Website to identify any instances where the Website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendants to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review;

J.   An Order directing Defendants, by a date certain, to make publicly available and directly link from the Website homepage, a statement of Defendants' Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

K.   An award to Plaintiff of his reasonable attorney's fees, costs, and expenses; and

L.   Such other and further relief as the Court deems just and equitable.

## **COUNT II – VIOLATION OF THE REHABILITATION ACT**

70.   Plaintiff re-alleges paragraphs 1 through 47 and 56 through 59 as if set forth fully herein.

71.     As more specifically set forth above, Defendants have violated the Rehab Act by failing to interface the Website with software utilized by blind and visually disabled individuals. Thus, Defendants have violated the following provisions either directly or through contractual, licensing, or other arrangements with respect to Plaintiff and other similarly situated individuals solely by reason of their disability:

a)      By excluding Plaintiff from participation in and denying him the benefits of or subjecting him to discrimination under any program or activity receiving federal financial assistance as a whole, Defendants have violated the Rehab Act;

b)      Congress enacted the Rehab Act to enforce the policy of the United States that all programs, projects and activities receiving federal assistance "…be carried out in a manner consistent with the principles of…inclusion, integration and full participation of the individuals [with disabilities]." 29 U.S.C. § 701(c)(3);

c)      Defendants are recipients of federal financial assistance as a whole bringing them under the Rehab Act, which prohibits discrimination against qualified or otherwise qualified individuals in all of the recipient's "programs or activities";

d)      Section 504 of the Rehab Act prohibits recipients of federal funding as a whole from discriminating against disabled persons and requires that their facilities, programs, and activities be readily accessible to persons with disabilities;

e)      The Rehab Act defines "program or activity" as all of the operations of the entire corporation, partnership, or other private organization, or sole proprietorship that receives federal financial assistance as a whole.  The Website and its content thus are a "program or activity" within the meaning of the Rehab Act, 29 U.S.C. §794(b)(3)(A);

f)      Plaintiff was denied access to the Website solely by reason of his disability. This denial of access to Defendants' "program or activity" subjected Plaintiff to discrimination, excluded Plaintiff from participation in the program or activity, and denied Plaintiff the goods, benefits, and services of the Website, a service available to those persons who are not blind or visually disabled. As of this filing, the Website remains inaccessible to qualified or otherwise qualified persons with a visual disability such as Plaintiff;

g)      The international website standards organization, WC3, has published widely accepted guidelines (WCAG 2.0 and WCAG 2.1 AA) for making digital content accessible to individuals with disabilities. These guidelines have been endorsed the United States Department of Justice and by Federal courts and the United States Access Board; and

h)      Defendants have engaged in unlawful practices in violation of the Rehab Act in connection with the operation of the Website. These practices include, but are not limited to, denying Plaintiff, an individual with a disability who, with or without reasonable modifications to the rules, policies, or practices, the removal of communication barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services to participate in programs or activities provided by Defendants.

72.      Defendants have acted with deliberate indifference to the applicable provisions of the Rehab Act as to the unlawful practices described herein because Defendants are fully aware of the inaccessible features of the Website and have failed to remediate the Website to make it equally accessible to persons with visual disabilities. Defendants knew that harm to a federally protected right was substantially likely to occur, yet failed to act on that likelihood when they failed to remediate the Website.  Defendants knew this, and on information and belief, a person with authority with Defendants to order the remediation of the Website made a deliberate choice not to

remediate, and to continue to offer the inaccessible Website to its customers and potential customers knowing that the Website was, and continues to be, inaccessible to the blind and visually disabled.

73.     Plaintiff would like to be a customer at Defendants' brick-and-mortar salons but before he goes to any of the salons, he would like to determine what services are available for his purchasing, what promotions are being offered, and what new items and services are currently available.  In that regard, Plaintiff continues to attempt to utilize the Website and/or plans to continue to attempt to utilize the Website on a regular basis to make selections for purchasing online or in the store.

78.     Plaintiff is continuously aware of the violations at Defendants' Website and is aware that it would be a futile gesture to attempt to utilize the Website as long as those violations exist unless he is willing to suffer additional discrimination.

79.     Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at the Website.  By continuing to operate the Website with discriminatory conditions, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive Plaintiff the full and equal access to and enjoyment of the benefits of the programs and activities Defendants make available to the general public. By encountering the discriminatory conditions at the Website and knowing that it would be a futile gesture to attempt to utilize the Website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same stores or the Website that are readily available to the general public, and thus is deterred and discouraged from doing so.  By maintaining the Website with access and Rehab Act violations, Defendants deprive Plaintiff the

equal access to and participation in the benefits of Defendants' programs and activities as the non-visually disabled public.

80.     Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendants' discrimination until Defendants are compelled to comply with the requirements of the Rehab Act.

81.     Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the Rehab Act with respect to the Website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the Rehab Act by Defendants.  Plaintiff desires to access the Website to avail himself of the benefits therein and/or to assure himself that the Website is in compliance with the Rehab Act so that he and others similarly situated will have full and equal access to and enjoyment of the Website without fear of discrimination.

82.     Plaintiff and all others similarly situated will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the Rehab Act as requested herein.

83.     Plaintiff is without adequate remedy at law and is suffering irreparable harm based on the facts alleged hereinabove.

84.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs, and litigation expenses from the Defendants pursuant to the Rehab Act, 29 U.S.C. §794a.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants for the following relief:

A.  A declaration that determines that the Website at the commencement of the subject lawsuit was in violation of the Rehabilitation Act;

B.  A declaration that the Website continues to be in violation of the Rehabilitation Act;

C.  A declaration that Defendants have violated the Rehabilitation Act by failing to monitor and maintain the Website to ensure that it is readily accessible to and usable by persons with visual disabilities;

D.  Issuance of an Order directing Defendants, by a date certain, to alter the Website to make it accessible to, and useable by, individuals with visual disabilities to the full extent required by the Rehabilitation Act;

E.  Issuance of an Order directing Defendants to evaluate and neutralize their policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective and remedial procedures;

F.  Issuance of an Order directing Defendants to continually update and maintain the Website to ensure that it remains fully accessible to and usable by visually disabled individuals;

G.  Award Plaintiff any and all compensatory damages for Defendants' deliberate indifference to his rights under the Rehabilitation Act;

H.  Award Plaintiff his attorney's fees, costs, and litigation expenses pursuant to the Rehabilitation Act; and

I.  Award such other relief as the Court deems just and proper and is allowable under the Rehabilitation Act.

DATED: March 1, 2022

**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
4800 N. Hiatus Rd
Sunrise, FL, 33351
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: duranandassociates@gmail.com


By_____*s/ Roderick V. Hannah*_____
      RODERICK V. HANNAH
      Fla. Bar No. 435384

By ____*s/ Pelayo M. Duran*_____
      PELAYO M. DURAN
      Fla. Bar No. 0146595